IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:23-CV-00185-BO

| | |
|---|---|
| THOMAS DEVITO, ) | |
| ) | |
| *Plaintiff*, ) | |
| v. ) | |
| ) | |
| BIOMET, INC.; BIOMET OTHOPEDICS, ) | |
| LLC; BIOMET U.S. RECONSTRUCTION, ) | O R D E R |
| LLC; BIOMET MANUFACTURING, LLC;) | |
| ZIMMER HOLDINGS, INC.; ZIMMER, ) | |
| INC.; ZIMMER BIOMET HOLDINGS, ) | |
| INC.; ROBERT VAVRINA; and NORTH ) | |
| CAROLINA DISTRIBUTORS, ) | |
| ) | |
| *Defendants*. ) | |

Before the Court is Zimmer, Inc, Zimmer Holdings, Inc. and Zimmer Biomet Holdings, Inc.'s ("Zimmer defendants") motion to dismiss. [DE 13]. The motion is fully briefed and ready for decision. For the following reasons, the Court grants the Zimmer defendants' motion to dismiss.

BACKGROUND

Plaintiff Thomas DeVito had his left and right hips replaced. He now claims both hip-replacement systems implanted were defective. This order covers only DeVito's claims relating to the hip-replacement system implanted in his left-side—the Zimmer Durom Cup metal-on-metal hip replacement ("Durom Cup").

On 5 February 2008, a Durom Cup was implanted into DeVito's left-side. DeVito and his doctor chose the Durom Cup because they expected it to perform better and to last longer than

other replacement systems. DeVito, then 56 years old, wanted to continue his active lifestyle. DeVito expected his quality of life would improve. But after the replacement, he experienced severe pain and discomfort, resulting in his inability to perform his daily living activities.

In 2020, DeVito had the Durom Cup removed and replaced. For the new replacement system, a non metal-on-metal system was selected because of "extensive metallosis from the metal prosthesis." [DE 1-3 ¶213]. The replacement surgery revealed "extremely severe soft tissue destruction consistent with ALVAL. . . . [with] complete destruction of the posterior capsule and the trochanter was nearly bald." [DE 1-3 ¶ 213.] As a result, DeVito alleges damages from past, present, future pain and suffering; severe and potentially permanent injuries; emotional distress; disability; disfigurement; and economic loss due to lost wages and medical and monitoring expenses. [DE 1-3 ¶ 219].

In his complaint, Devito alleges claims against the Zimmer defendants for (1) negligent, grossly negligent, wanton, and reckless concealment; (2) negligent, grossly negligent, wanton, reckless and willful misconduct by defendants' failure to warn; (3) negligent, grossly negligent, willful and wonton conduct with respect to design and manufacturing defects; (4) breach of implied warranty; (5) breach of express warranty; (6) negligent misrepresentation; (7) negligence; (8) unfair and deceptive trade practices in violation of N.C. Gen. Stat. 75-1.1; (9) unjust enrichment; (10) fraud; and (11) punitive damages.

On 22 February 2023, DeVito filed his complaint in Wake County Superior Court. [DE 1-3]. On 10 April 2023, the Zimmer defendants and the other non-fictious defendants—Biomet Inc., Biomet Orthopedics, LLC, Biomet U.S. Reconstruction, LLC, Biomet Manufacturing, LLC, and Robert Vavrina—removed the action under 28 U.S.C. §§ 1332(a), 1441, and 1446. [DE 1]. DeVito did not oppose removal.

On 17 April 2023, Zimmer moved to dismiss all claims against them for failure to state a claim for relief, filing a memorandum in support. [DE 13, 14]. Zimmer argues that DeVito's claims are barred by the North Carolina statute of repose governing products liability actions at the time DeVito's Durom Cup was purchased and implanted. DeVito contests the applicability of the statute of repose. DeVito argues that he falls within an exception for latent diseases. [DE 24]. The motion to dismiss fully briefed, this matter is ripe for decision.

## DISCUSSION

A Rule 12(b)(6) motion to dismiss focuses on the pleading requirements under the Federal Rules. "Rule 8(a)(2) requires only a short and plain statement of the claim showing the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (cleaned up) (internal quotation marks and citations omitted). Although a complaint does not need detailed factual allegations to survive a 12(b)(6) motion to dismiss, the complaint must show an entitlement to relief through more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *See, e.g., Barrett v. Pae Gov't Servs., Inc.*, 975 F.3d 416, 434 (4th Cir. 2020). The "[f]actual allegations must be enough to raise a right to relief about the speculative level." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955. That is, "[the] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955).

Because a Rule 12(b)(6) motion tests only the sufficiency of the complaint; "it does not . . . 'resolve contest surrounding the facts, the merits of a claim, or the applicability of defenses.' " *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (quoting *Edwards v. City of Goldsboro*, 178

3

F.3d 231, 243 (4th Cir. 1999)). "So the district court must accept as true all well-pleaded allegations and draw all reasonable factual inferences in plaintiff's favor." *Mays v. Sprinkle*, 992 F.3d 295, 299 (4th Cir. 2021).

Because federal jurisdiction here rest on diversity[1], the Court looks to North Carolina law to determine the governing substantive law. *See Klaxon Co. v. Stentor Elc. Mfg.*, 313 U.S. 487, 496–97, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Towers Watson & Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 67 F.4th 648, 653 (4th Cir. 2023). No hard look necessary: the parties do not dispute that under North Carolina's choice of law rules, North Carolina law governs. *See* [DE 14 at 4–5]; [DE 24]. So North Carolina law will govern the analysis. *See Minnieland Priv. Day Sch., Inc. v. Applied Underwriters Captive Risk Assurance Co.*, 913 F.3d 409, 415 n.4 (4th Cir. 2019).

The Zimmer defendants argue that North Carolina's statute of repose for products liability actions bars DeVito's claims. A statute of repose "serves as an unyielding and absolute barrier that prevents a plaintiff's right of action even before his cause of action may accrue . . . ." *Black v. Littlejohn*, 312 N.C. 626, 633, 325 S.E.2d 469, 475 (1985). The statute of repose is a condition precedent to an action itself. *Boudreau v. Baughman*, 322 N.C. 331, 340, 368 S.E.2d 849, 857 (1988). Unlike ordinary statutes of limitation, which "merely make[] a claim unenforceable," *Id.*, a statute of repose defines the substantive right: if the claim is not brought within the time period

---

[1] DeVito, a North Carolina resident, asserts claims against North Carolina distributors without further identification. If those defendants were parties, complete diversity would be destroyed, and this Court would lack subject matter jurisdiction under 28 U.S.C. § 1332(a). 28 U.S.C.§ 1441(b), however, directs courts to disregard "the citizenship of defendants sued under fictitious names. So this Court will disregard the fictious defendants. *See Waker v. Bankers Life Ins. Co.*, No. 7:18CV000118, 2018 WL 2347100, at *3 (W.D. Va. May 23, 2018) (collecting cases disregarding fictious defendatns); *Johnson v. Southern Industrial Constructors*, No. 5:21-cv-00165, 2021 WL 2102726, at *3 (D.S.C. May 25, 2021); *Hesed-El v. Bryson*, 1:21-CV-00305, 2022 WL 4287975, at * 3 (W.D.N.C. Jul. 12, 2022), *Report & Recommendation adopted*, No. 1:12-CV-00305, 2022 WL 3370797 (W.D.N.C. Aug. 16, 2022).

4

set by the statute of repose, the condition precedent is not satisfied and the plaintiff "literally has *no* cause of action," *Id.* at 341 (internal quotations and citation omitted).

North Carolina's statute of repose for products liability actions bars all "action[s] for the recovery of damages for personal injury . . . based upon or arising out of any alleged defect or any failure in relation to a product." N.C. Gen. Stat. § 1-46.1. The window to commence an action under this substantive limitation has fluctuated. Currently, § 1-46.1 bars all such actions "brought more than 12 years after the date of initial purchase for use or consumption." But its predecessor, § 1-50(a)(6), bars all actions "brough more than six years after the date of initial purchase for use or consumption." When replacing § 1-50(a)(6)'s six years with § 1-46.1.'s twelve years, the General Assembly made clear § 1-46.1's twelve years applies only to causes of action accruing on or after 1 October 2009. *See* An Act effective Aug. 5, 2009, § 3, 2009 N.C. Sess. Laws 809.

The Durom Cup was implanted during DeVito's left-side hip replacement surgery on 5 February 2008. That date is "properly considered the date of initial purchase for use or consumption for the purpose of the statute of repose." *Fulmore v. Johnson & Johnson*, 581 F.Supp.3d 752, 756 (E.D.N.C. 2022); *see also Cramer v. Ethicon, Inc.*, 1:20-CV-95, 2021 WL 243872, at *4 (W.D.N.C. Jan. 25, 2021) (finding latest date of purchase of pelvic mesh for use or consumption was date of implantation surgery); *In re. Mentor Corp. Obtape Transobturator Sling Prods. Liab. Litig.*, 4:12-CV-355, 2016 WL 873854, at * (M.D. Ga. Mar. 4, 2016) (applying North Carolina law and concluding date of implantation controlled). Thus, § 1-50(a)(6)'s six years applies to all of DeVito's claims for damages arising from the Durom Cup.

Because § 1-50(a)(6)'s six-year window applies, DeVito "must prove the condition precedent that the cause of action is brought no more than six years after the date of initial purchase of the product for use or consumption." *Bolick v. Am. Barmag Corp.*, 306 N.C. 364, 370, 293

5

S.E.2d 415 (1982). DeVito did not file this action until 22 February 2023, more than fifteen years after the Durom Cup was implanted. Thus, the statute of repose extinguished DeVito's claims against the Zimmer defendants long before he filed suit. They must be dismissed unless an exception applies.

One does, DeVito argues. Specifically, that § 1-50(a)(6) does not apply to his claims because long-term exposure to metal debris from the Durom Cup resulted in metallosis, a build-up of metal particles in the surrounding tissue. A condition, contends DeVito, that places him within the latent disease exception recognized by the North Carolina Supreme Court in *Wilder v. Amatex Corp.*, 314 N.C. 550, 336 S.E.2d 66 (1985). Although the North Carolina Supreme Court in *Wilder* recognized the latent disease exception in when interpreting a different statute of repose, *see* 314 N.C. at 561, 336 S.Ed.2d at 72–73, the exception applies to N.C. Gen. Stat. § 1-50(6). *Hyer v. Pittsburgh Corning Corp.*, 760 F.2d 30, 33–34 (4th Cir. 1986); *Bullard v. Dalkon Shield Claimants Tr.*, 74 F.3d 531, 533 n.4 (4th Cir. 1996); *Gardner v. Asbestos Corp., Ltd.*, 634 F.Supp. 609, 611–12 (W.D.N.C. 1986) (Sentelle, J.); *but see Klein v. DePuy, Inc.*, 506 F.3d 553, 557–59 (7th Cir.) (rejecting application of *Wilder*'s disease exception to § 1-50(a)(6)).

In *Wilder*, the North Carolina Supreme Court distinguished "[d]iseases . . . [that] normally develop over long periods of time after multiple exposures to offending substances which are thought to be causative agents[]" from injuries where "it [is] possible to identify a single point in time when plaintiff was first injured." 314 N.C. at 557, 336 S.E.2d at 76. The key distinction is that with diseases "[i]t is impossible to identify any particular exposure as the first injury." *Id.* (internal quotation marks omitted). The difficulty with "[d]iseases such as asbestosis, silicosis, and chronic obstructive lung disease[,]" is that it is difficult to pinpoint or establish that the disease was caused by a product because "one or even multiple exposures to an offending substance . . .

6

may not constitute an injury." *Id.* (citing *Borel v. Fibreboard Paper Prods. Corp.*, 493 F.2d 1076, 1083 (5th Cir. 1973) (explaining that the difficulty in identifying which exposure to asbestos dust caused asbestosis because the disease is the cumulative result of many exposures to asbestos dust)).

The injuries alleged here do not fit within *Wilder*'s definition of a disease. DeVito has alleged that he experienced severe pain and discomfort following implantation, soft-tissue destruction, and other damage to the hip joint because of metallosis caused by the Durom Cup. [DE 1-3 ¶¶ 212–213]. DeVito's alleged injuries are complications or symptoms from the implantation of an allegedly defective metal-on-metal hip replacement system, and these injuries and their traceability to single definite act—the 05 February 2008 implantation—distinguishes them from any latent disease as defined in cases applying that exception. *See Fulmore*, 581 F.Supp.3d at 758; *Cramer*, 2021 WL 243872, at * 5 (holding that urinary tract and bladder infections from defective pelvic mesh were not "within [the] narrow category of latent diseases[]" recognized in *Wilder* because "alleged injuries [were] attributable to a single event: [p]laintiff's implantation with the [pelvic mesh]."); *In re. Mentor Corp.*, 2016 WL 873854, at * 3 (concluding latent disease exception does not apply because plaintiff's claim "is not a claim arising from disease that developed over many years after multiple exposures to a toxic substance; it is a claim arising from complications she contends were caused by a medical device that was implanted in her body.").

Under DeVito's allegations, not only is it impossible not to tie his injuries to single event but DeVito's allegations of exposure further distinguish his injuries from the Durom Cup to those recognized as latent diseases in *Wilder* and the federal cases applying that definition. *See Hyer*, 790 F.2d 30 (asbestosis from over thirty years of work as insulator); *Guy v. E.I. DuPont de Nemours & Co.*, 792 F.2d 457 (4th Cir. 1986) (COPD from twenty-five years of exposure to

diisocyanate); *Bullard*, 74 F.3d at 535–36 (pelvic inflammatory diseases which "may have been contracted as a result of the introduction of a foreign substance" (quoting *Covalt v. Carey Canada, Inc.*, 543 N.E.2d 382, 384 (Ind. 1989)); *Stahle v. CTS Corp.*, 817 F.3d 96 (4th Cir. 2016) (leukemia from nine years of downstream exposure to toxic solvents). Put simply, DeVito's allegations of metal exposure and the accompanying injuries are of a different kind than those causative agents in cases where courts have recognized latent diseases within *Wilder*'s definition.

In sum, § 1-50(a)(6) extinguishes any actions for damages caused by a defective product unless such action is brought within six years of that product' purchase for use or consumption. There is a limited exception for latent diseases because they develop over long periods of time from many possible exposures—some causative, others benign—and it is impossible to pinpoint the moment in time where the defendant was first exposed. That exception does not apply to DeVito. DeVito can pinpoint the exact moment he was first injured: when the Durom Cup was implanted into his left hip. And DeVito alleges immediate damage from exposure to metal debris from the defective Durom Cup. Thus, the disease exception does not apply and any action for damages against the Zimmer defendants was extinguished by the statute of repose long before DeVito filed this action.

## CONCLUSION

For all these reasons, the Zimmer defendants' motion to dismiss [DE 13] is GRANTED.

SO ORDERED, this **25** day of March 2024.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE

8